CALVERT *v.* HALEY.

4-9437                                           238 S. W. 2d 664

Opinion delivered April 16, 1951.

Rehearing denied May 21, 1951.

*Mahony & Yocum* and *Joseph Morrison,* for appellant.

*Hendrix Rowell,* for appellee.

PAUL WARD, J.   The Farelly Lake Levee District was organized several years ago pursuant to legislative enactment and embraced approximately 100,000 acres of land situated in Arkansas and Jefferson counties.   The tax burden was heavy and in time a great many of the landowners were unable to pay, which resulted in a receivership through the chancery court.   Several foreclosure suits were filed by the receiver, but they were allowed to pend for approximately twelve years without any decree being taken.   Following this the District made arrangements with the R.F.C. to furnish the money to buy up the original bonds for twenty-five cents on the dollar, and thereafter the District owed the reduced debt to the government agency.   Notwithstanding this arrangement the levee taxes were still burdensome and approximately sixty per cent of the lands forfeited to the District.

In a salutary effort to help the taxpayers and in an effort to retire the indebtedness to the R.F.C., the District worked out a plan to allow the landowners to redeem or buy their lands.   The Board of Commissioners of the Levee District passed a resolution in 1940 which was approved the next year by the R.F.C., giving the landowners a right to ''pre-pay'' the assessments of benefits against their lands and thereby retain a clear legal title to the same.   This resolution was to be effective for a period of one year only, but, actually, it was renewed by the board each year and much publicity was given to it,

advising the people of its effect and provisions. Apparently the plan was successful. The first resolution became effective in 1941 or 1942 and by May, 1947, the indebtedness of the District was reduced from over $400,000 to approximately $66,000.

Lands belonging to appellants became delinquent several years before the said resolution was adopted and the District obtained a decree in chancery court foreclosing same. A commissioner's sale followed and the same was confirmed. On February 12, 1947, the Farelly Lake Levee District executed its quit claim deed conveying to appellees some of the lands belonging to appellants, but which had been foreclosed by the District in the manner mentioned above. The said quit claim deed embodied the resolution of the District which was heretofore mentioned. Appellants, seeking to take advantage of the provisions of the resolution whereby they could "redeem" these lands from the District, made tender of the amount due after the sale to appellees, but before the resolution expired on the first day of May, 1947.

On October 27, 1947, appellees filed this suit in chancery court, alleging the execution of the quit claim deed; that the defendants (appellants) "erroneously and unlawfully claim some right, title and interest in and to the property aforesaid," that "none of said defendants has any lawful or legal right, title or interest in and to the property aforesaid, and that accordingly the title thereto should be quieted and confirmed in these plaintiffs." The prayer asked that the title to said property be quieted and confirmed in the plaintiffs. To the above complaint appellants filed a demurrer stating it did not state facts sufficient to constitute a cause of action. Evidently one of the grounds urged under this demurrer was that the complaint did not allege the plaintiffs were in possession, because later the plaintiffs (appellees) amended their complaint to state that immediately after they purchased the lands from the District they went in and upon said property, took exclusive possession thereof, and are now in possession. Thereupon appellants moved to transfer to the circuit court and, in response thereto, appellees again stated that they and their agents

were in possession. The court heard testimony on the motion to transfer and on October 4, 1949, entered an order overruling the same. Saving their exceptions, appellants then filed answers in which they made certain allegations attacking the validity of the District's foreclosure proceedings and claiming certain rights to "redeem" under the resolution discussed above.

We are not concerned here with the merits of the contentions set forth in appellants' answers nor will we discuss the testimony introduced to sustain and to controvert those contentions, because we are of the opinion that the learned chancellor should, after hearing the evidence, have granted appellants' motion to transfer to the circuit court. We gather from the record that this question gave the chancellor much concern and, in arriving at his conclusion, it appears that he gave too much weight to the interpretation of a certain statute as will be discussed later.

To begin with it must be conceded that these appellants were in possession of the lands they owned at the time the District foreclosed, and further, that in said foreclosure proceedings, no Writ of Assistance was asked for and none was granted. The appellants, therefore, were, up to the time of the deed from the District to appellees, in possession of their lands. The testimony shows that much of the land was unimproved and part of it was a lake which has been and is now used for duck hunting, but it also shows that some fencing was done by appellants and some parts of it had been in cultivation and one or more duck blinds had been built and used by appellants and their friends. Testimony on the part of appellees tending to show possession is principally to the effect that they meant to take possession when they bought the land; that they and their friends and agents had hunted on it some and had built or repaired a duck blind. In our opinion the weight of the evidence clearly shows that appellants never relinquished possession of the lands involved and, to the same effect, it fails to show that appellees ever gained such possession as, under the law, would entitle them to maintain their action to quiet title.

The court, however, took a different view as is shown by the following quotation from its opinion: ''After looking into this question very thoroughly, it is apparent to me that the question of who was, or is, in possession of the premises is totally immaterial.'' Section 20-1143 Ark. Stats., 1947, provides as follows: (here the opinion sets out the wording of the statute). It is sufficient here to state that the said statute provides that when a commissioner's deed is approved, as in this case, ''the purchaser shall have the right to the possession of the lands and premises so sold and may have process therefor . . .''. It must be admitted that here the District had a right to possession of appellant's lands when it foreclosed on them through chancery court and also had a right to ask for a Writ of Assistance to give it possession, but it did not ask for any such Writ and none was issued. Later the lands were sold by the District to appellees who now bring this suit to quiet title in them.

The chancellor may have taken the position that since both suits were brought in the same court, it is possible now to give appellees possession. We cannot agree with this conclusion for two reasons. First, the statute requires that one bringing a suit to quiet title must be in actual possession. It would not be a compliance with the statute to seek possession in the very suit which pre-supposes possession before the suit is filed. In the second place, the parties involved in this suit are not the same parties involved in the foreclosure by the District and the right to ask for a Writ of Assistance was not transferred to appellees by virtue of their deed from the District. In addition to this, it must be remembered that appellants have filed answers in which they question the title of appellees and under such circumstances the courts should be cautious in directing a writ of possession. 37 Am. Jur., p. 208, § 819 makes this statement: ''The exercise of the power to grant the writ rests, however in the sound discretion of the court, and the power will never be exercised in a case of doubt, nor under color of its exercise will a question of legal title be tried or decided.''

For the reasons stated the cause will be reversed and remanded with directions to transfer to circuit court.